AUFFANT *v*. SERRA ET AL.

APPEAL from the District Court of Ponce.

No. 179.—Decided February 5, 1908.

CONFLICTING EVIDENCE—APPEAL.—Where the evidence in a case is conflicting or contradictory, the conclusions reached by the inferior court in its findings upon the evidence must be accepted by the appellate court in the absence of a clear showing that manifest error has been committed.

The facts are stated in the opinion.

*Mr. Alvarez Nava* for appellant.

*Mr. Torres* for respondent.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

This is an appeal taken by Attorneys Tord, Toro & Canales on behalf of the defendants in the above-mentioned case from a judgment rendered therein by the District Court of Ponce on April 6 of last year, dismissing the complaint filed by the plaintiff, Pedro Auffant y Figueroa, adjudging the defendants to restore the plaintiff in the possession of the estate referred to in the complaint, and making the other orders contained in said judgment.

The complaint in question reads as follows:

"The above-mentioned plaintiff, Pedro Auffant y Figueroa, a resident of this place, unmarried, a landowner and of age, through his attorney, says: 'That he files a complaint against Juan Serra Urgell, Antonia Olivera, Francisco, Clotilde, Mauricio, Narciso, and Jaime Serra, all of them of age and residing in the *barrio* of Hato Puerco Abajo, in the municipal district of Juana Díaz, which complaint is brought for the recovery of a rural estate and the same being based on the following facts':

"First.—The plaintiff, Pedro Auffant y Figueroa, is the legal owner and proprietor of the following property: Estate situated in the *barrio* of Hato Puerco Abajo, in the municipal district of Juana Díaz, having an area of 260.25 *cuerdas*, equivalent to 102 hectares, 28 ares, and 84 centares, in pasture, woods, brush, cocoanut palms and other

palms, bananas, plantains and some parts in coffee. Upon said estate there were situated three frame houses: One 26 meters wide and eight long, roofed with galvanized iron and having its sides clapboarded; a storehouse 10 meters wide by seven deep, roofed with galvanized iron and having its sides boarded with shingle; and another house, which was used as a store, 10 meters wide by 4.5 in depth, also roofed with galvanized iron. These buildings were situated on the banks of the Jacaguas and Toabaca Rivers. This estate is bounded on the north by property belonging to Juan Serralle y Colón; on the south by lands belonging to Miguel Cintrón; on the east by the property of Braulio Fernández; and on the west by other property belonging to Serralles and the Jacaguas River.

Second.—The plaintiff, Pedro Auffant y Figueroa, acquired this estate in the following manner: By deed number 372 of June 22, 1896, executed before Rafael León, a former notary of this city, Juan Serra Urgell sold to Auffant Hermanos, a commercial firm of this city, whose members were the plaintiff Pedro, and his brother Eugenio Auffant y Figueroa, the estate described in the foregoing statement of fact, for the sum of 1,000 *pesos* in money then current, which was paid and of which the vendor acknowledged the receipt. But the condition was stipulated that if said vendor, Serra Urgell, or his heirs, should desire on or before January 31, 1897, to recover the estate sold and returned to the vendee firm the price received, the property would be restored to him in the same condition in which it was received; and that if this term should expire without the price being returned to the purchaser, the same would become consummated without the necessity of further proceedings than the recording of this circumstance in the registry of property of the judicial district. This contract was recorded in the Registry of Property of Ponce at folio 48, over, of volume 30 of the municipality of Juana Díaz, estate No. 1505, second record. Upon the dissolution of the vendee firm of Auffant Hermanos by instrument of February 13, 1897, executed before Notary Joaquin Mayoral, it was placed in liquidation; and subsequently, by deed of May 29, 1897, the partner, Eugenio Auffant y Figueroa, sold his undivided half interest in each one of the properties of the dissolved firm, which included the estate described in this complaint, to the other partner, Pedro Auffant y Figueroa. This sale was recorded in the registry of property of this city at folio —, volume 30 of Juana Díaz, estate No. 1505, fourth record. Pedro Auffant y Figueroa now being the owner of the entire estate the subject of this complaint and the term agreed on for the recovery thereof by the

vendor, Serra Urgell, having more than expired without the latter having availed himself of his right, Mr. Auffant consummated the sale in his favor, recording such consummation in the Registry of Property of Ponce on March 9, 1898.

"Third.—The sale having thus become consummated, the plaintiff, Auffant, through his attorney in fact, Eugenio Auffant, on April 8, 1899, then applied to the court of first instance of this city for the judicial possession of the estate in question, and on the said date such possession was ordered and given to him on the 12th of said month and year in the person of his said attorney in fact, through the bailiff and clerk of the court, after compliance with the formalities of law; and notwithstanding the notices served no opposition was made to such possession.

"Fourth.—The plaintiff, the moment he took possession of the estate, placed a person in charge thereof to manage and care for it. But as the cyclone of 1899 left the estate in a bad condition, dismantling two of the buildings and the flood carrying away the third, the person placed in charge thereof left and Auffant could not immediately find another person in whom he could trust to place in charge of the estate, which was left uncared for.

"Fifth.—At this stage Juan Serra Urgell, who with his household had vacated the estate a long time before the plaintiff took possession of it, returned after such possession with the other defendants and occupied the estate, and without any title whatsoever and against the wishes of the plaintiff, they have appropriated it, all of them exercising thereon acts of ownership, cultivating it and enjoying the usufruct thereof; and when the plaintiff has endeavored to cause them to cease this occupancy of his property they alleged that Serra was the exclusive owner thereof, refusing to vacate it and leave it at the disposition of its lawful owner, Auffant, who, since that time, has been deprived of the free use and enjoyment of his property and the quiet and peaceful possession thereof; having furthermore suffered the loss of one of the buildings which remained on the estate after the cyclone, which building formed part of the property referred to and which was destroyed by the defendants.

"Therefore, the plaintiff prays the court that, after compliance with the formalities of law, it render judgment in favor of the plaintiff and against the defendants, adjudging the latter to restore the former to the possession of the estate described, to recognize the ownership of the plaintiff in said estate which they shall vacate and restore to the plaintiff, to pay an indemnity for the damages they have

caused him by the detention of the estate, and to pay the costs of these proceedings.   Gustavo Rodríguez, Attorney for the Plaintiff.''

The defendants demurred to the complaint through their attorneys, Tord, Toro & Canales, on the ground that it did not state facts sufficient to constitute a cause of action; and Attorney Tord having filed a petition praying the court to set aside his appearance on behalf of the defendant, José Serra Urgell, because the latter had been declared insane by the district court, and not having any guardian or other person to represent him, he prayed at the same time that he should be appointed guardian *ad litem* for the incapacitated person on account of being his friend and knowing that he had a good and substantial defense.   The court overruled the demurrer of the defendants, excepting that of Juan Serra Urgell as to whom the court reserved the appointment of a guardian *ad litem* for which purpose López de Tord was directed to recommend a person to assume such duties; and thereupon said attorney filed another petition offering to accept the office if the court saw fit to appoint him, as he had already represented the incapacitated person in other actions brought against him by the said Pedro Auffant; the court granted this petition and allowed him 10 days in which to make answer to the complaint. This he did through his attorneys, Tord, Toro & Canales, alleging the following facts:

''I. That he denies each and every one of the allegations contained in the complaint.

''II. That the contract of sale referred to in the second clause of the complaint does not express the real will of the defendant, his consent having been secured through false and deceptive statements and insidious and fraudulent machinations on the part of the plaintiff who induced him to sign said contract in the belief that a mortgage was involved and by no means a sale.

''III. That at the time of the execution of the deed of sale referred to in the said second clause of the complaint, the defendant was suffering from insanity and therefore incapable of contracting obligations of any kind.

"For all of these reasons the defendant prays for judgment in his favor and against the plaintiff as follows: 1. Setting aside the deed of sale mentioned in the complaint and ordering the cancellation of the record thereof in the Registry of Property of Ponce. 2. Taxing the costs of the proceedings against the plaintiff."

A motion having been made that the default of the defendants, Antonio Olivera and Francisco, Clotilde, Mauricio, Narciso, and Jaime Serra, be entered by reason of their failure to answer the complaint within the term of 10 days granted them for the purpose, such default was entered and the trial was held, the defendant admitting all the facts of the complaint relating to the title of the plaintiff, Auffant, and the posession of the estate by the defendant, with the exception of the ownership alleged by the plaintiff, that being exactly the point at issue in these proceedings.

After these explanations had been made at the trial, counsel for the defendant presented his evidence of the incapacity of his client, alleged in the answer as a basis for the annulment of the contract of purchase and sale upon which the complaint is based, such evidence consisting of the testimony of said counsel, Attorney López de Tord, of Drs. Luis Aguerrevere and Estaban Vidal, and of Julio Ribas. The testimony of the first of these was as follows:

"That he is well acquainted with Juan Serra Urgell; that he has known him since 1895; that as he was intimate with him and had occasion to meet him often, and it was evident that said Serra Urgell was lacking in intellectual faculties and absolutely insane; that he bases his statement on the fact that Serra Urgell had been coming to his office as far back as 1895 and would propose to him the most startling lawsuits relating to patents for the extinction of volcanic craters and which had been stolen from him, and other strange inventions of the same character; that he entertains no doubt, saying so on his word of honor, that said Serra is a person deprived of his intellectual powers, in which state he has been since the date he has had occasion to meet him two or three times a day, for a long time, during which time he has not had a lucid interval; that one of the characteristic traits of his insanity is his credulity and mania for greatness, because said

Serra believes that he has registered in the Washington offices from 40 to 50 inventions of the most wonderful character; that the most notable trait from a physical standpoint is his credulity, because a boy seven years of age is better able to distinguish between what has existed and what has not existed; that at the present time his condition is the same; that he has not seen him for 15 days, because he has gone to the country; that the deponent was appointed guardian *ad litem* in these proceedings and had acted as counsel in other actions brought by Auffant against said Serra Urgell; that he remembers having frequently seen Serra Urgell in 1896; that his visits to his office and to his home have been very numerous since 1895, and that he always spoke to him of his affairs and claims; that he can give the assurance by making a logical deduction from the many visits which he has made to him; that in 1896 Serra Urgell had not had a single lucid interval; that as the attorney in the matter he had knowledge of a contract subsequently entered into with Auffant; that the claims on which Serra Urgell consulted him as a lawyer were against an infinite number of persons, among whom he remembers was Cortada, who, he alleged, had stolen the patent for his invention; that he cannot state precisely where he told him that he had his patents registered at the time; that he did not know on what Juan Serra Urgell was living in 1895 to 1896, because he was living in the country; that at that time he did not know his family, with whom he later became acquainted; that he had occasion to go to said house by reason of litigation with Auffant; that he believes that this man was and is really ill—a crazy man, according to the opinion of any one with common sense.''

## The second, that is to say, Luis Aguerrevere, testified:

''That he is a physician and surgeon, and has been practicing his profession for 24 years; that he has known Juan Serra Urgell since 1886 and has frequently spoken to him between that time and the present date; that he is insane and has the mania for greatness; that his mental aberration dates from the time he has known him; that the mental condition of Serra is not of a character in which there are lucid intervals; that the insanity of Serra Urgell is manifested in what is commonly called 'manias,' the 'mania of greatness'; that Serra alleges to have a specific 'Salvador' which cures everything; that he has another invention of a railroad upon the sea, another to put out volcanoes, and a number of others of the same character; that from his knowledge of the matter he asserts that Mr. Serra is insane

and does not act rationally in the ordinary matters of life; that the last time he saw him he found that he had dyed his hair and that he told him: 'Now I am going to get rich with these hair dyes which I have invented'; that it is easy to make Serra believe preposterous things; that once he was made to believe that Dr. Torres had collected from him a check for $60 and that Dr. Torres became afraid of him because he came to him with a club to secure the return of his money; that he believes that Serra is in a state of absolute mental aberration and that this state does not have any interruptions; that it is permanent, without any lucid intervals whatever; that he had not seen him for about 15 days, but that the last time he saw him he was in the same condition; that he has reached this scientific conclusion because he had come in contact with him very frequently, because while the deponent was the Director of the Tricoche Hospital, he went there every day; that between 1885, when he first became acquainted with him, and 1907, he has come in contact with him very often, because he was always in the house of Julio Ribas, the witness remembering that he went as a physician and friend, and had had occasion to amuse himself there with his insanity; that his insanity is manifested in 20,000 different ways; that during the nineties the son of Julio Ribas cut off his fingers and he wanted to treat him with his specific 'Salvador' without considering the anguish of the father at the moment; that with respect to the means of livelihood of Serra Urgell between 1885 and 1907, all he can say is that he saw him in the house of Julio Ribas and that without knowing how he lived he knows that he had a plantation; that he believes that all transactions of Serra must be in relation to his mental state of aberration; that he has no judgment and all his business must be transacted badly; that he would not venture to entrust any business to Serra Urgell, no matter how unimportant; that in the year 1896, towards the end of the month of June, Serra Urgell was in the same state in which he is now; that in his judgment, in view of his acquaintance with Serra Urgell at that time— June 22, 1896—the latter could not have entered with sufficient knowledge info a contract of sale or mortgage relating to his real property; and that he believes that, in view of his mental condition at that time, it was impossible for him to transact business sensibly."

The third witness, Esteban Vidal y Ríos, testified:

"That he is a physician and surgeon and has been practicing in Ponce for more than 30 years; that he has known Juan Serra Urgell since 1885 and has met him often since that time; that he has attended

him and his family in a professional capacity on different occasions, and that ever since he has known and met him he has considered him insane; that his insanity is not partial, nor is it of a character in which there are lucid intervals; that the brain of Juan Serra has been completely unbalanced since he has known him, and it is impossible for his insanity to escape notice upon the most superficial professional observation; that about the year 1885 he went as a physician to visit the family of Serra, who live in Villalba, *barrio* of Juana Díaz, and he was horrified to observe the lamentable state of disorder and confusion in the family due to the insanity of Serra; that in 1885 Serra had already made a number of imaginary and wonderful inventions, this being what led him to make a careful examination of his deplorable mental state; that subsequently Juan Serra discontinued visiting him, the cause being that the poor insane man believes that he endeavored to poison him in order to rob him of a fabulous number of millions which he believes he owns; that he mistrusts and suspects everybody and believes himself bewitched; that he does not believe that any honorable physician after examining him would venture to deny his insanity.''

## The fourth witness, Julio Ribas, testified:

''That he is a planter and resident of Ponce; that he has known Juan Serra Urgell since 1890 or 1895, and that he has had occasion to meet him frequently, because he lived in his house; that he remembers the first time he saw him; that it was here in Ponce; that he could observe that he was mentally unbalanced, as he had the peculiarity of believing himself a great inventor; that he was suffering from a mania of greatness; he said that he had a specific 'Salvador' which cured everything; that he was the inventor of a liquid for putting out volcanoes, and of other inventions as absurd as this one; that he noticed this mental aberration the first time he met him; that there is no one who has not noticed it; that he spoke to him of an estate he had, and that he informed him that he was going to mortgage it; that he does not remember the day he told him this; that it was in 1905 or 1906 that the deponent spoke to Auffant with respect to this contract; that he later learned, having asked Auffant, that Serra and Auffant had entered into a contract with a clause of redemption, and that when he expressed his surprise to the latter, as a simple mortgage and not a sale had been involved, Auffant informed him that it was the same thing.''

Upon cross-examination by the plaintiff the witness further stated:

"That when he spoke to Auffant of the transaction it was a few days after it had been made; that on said date Serra Urgell was already insane; that he says this without being a physician on account of the notorious fact that he was a man who was very heedless in his transactions; and that belief is confirmed by the fact of his having entered into a contract of repurchase with Auffant believing that he was constituting a mortgage; that the witness was a member of the firm of Zeno & Ribas, of which he was the managing partner; that Serra Urgell owed Zeno & Ribas a sum which was paid by an order drawn on Auffant; that after the transaction between Serra and Auffant the deponent had interfered only to make a suggestion to Auffant; that after Auffant had told him that the contract was one of sale with a redemption clause he had taken no further part in the matter because it was not his business; that he did not know that Juan Serra had gone to some town in the Island to get money to pay Auffant."

A letter having been shown the witness, he stated:

"That it was his and written by him personally in his own hand; and replying to questions of the plaintiff, he said:

"That the date to which he had previously referred was not the year 1905 or 1906, but 1895 or 1896."

Thereupon the plaintiff submitted the letter acknowledged by the witness, requesting its admission for the purpose of controverting the testimony of the witness Ribas, to which the defendant objected, alleging that said letter, not having been written by the defendant or his attorney in fact, it was irrelevant. The court, however, overruled the objection of the defendant, and said letter having been admitted, the defendant noted an exception.

This letter reads as follows:

"Mr. Pedro Auffant, City. Dear Friend: In accordance with the agreement between you and myself with reference to the debt of Juan Serra, he is going to you to secure the extension agreed on. If you

give him an extension to the month of January of next year, 1897, I can assure you that I will guarantee that he will pay you, because I have arranged the matter for him with a friend for that date. This arrangement may result in this friend, who wishes to buy something here, making the purchase, but in any event he will give him the money if he does not purchase. For this reason I hope that you will take this poor soul out of the trouble which business of this character entails. Thanking you in advance, I am very truly yours, Julio Ribas. Ponce, July 29, 1897.''

The plaintiff submitted another letter which, after having been acknowledged by Ribas, was admitted by the court, over the objection of the defendant, to impeach the testimony of the same witness, based on the irrelevancy of such evidence. The defendant noted an exception.

This letter reads as follows:

''Mr. Pedro Auffant, City. Dear Friend: I would like you to come and see me to-morrow, Sunday, to close the Serra matter. The latter tells me that you will give him an extension of only three months. When we meet we will settle this matter definitely. Thanking you in advance, I remain, your affectionate friend and obedient servant, Julio Ribas. July 30, 1897.''

Upon being asked by the plaintiff whether Mr. Auffant had ever proposed to him the assignment of the rights which he had in the matter, he replied that he had not.

The plaintiff having shown him another letter, which the witness acknowledged as his, the court admitted it to impeach the veracity of the witness, overruling the objection of the defendant, who alleged that it was irrelevant, the defendant noting an exception.

This letter reads as follows:

''Mr. Pedro Auffant, City. Dear Friend: Don Juan has returned from Yauco without having obtained the money to fulfill that obligation. As I cannot ask you for further extensions in this matter on his account, I propose to you that you transfer to me that obligation on the 15th of next January, with the same rights which you have

under the documents, after duly considering the matter; I do not know how this may be done, but we could see in due time. In this way you will get out of this joke and I will have to wait a little longer to see if he sells his estate. Thanking you in advance, your affectionate friend. Julio Ribas.

"P. S.—You can send the document for collection next Monday. Ponce, December 31, '97."

Replying to questions of the defendant he said:

"That the only purpose of the assignment proposed to Mr. Auffant was to prevent the latter from consummating the sale without further extensions in order to let Urgell sell it."

Counsel for the plaintiff submitted as evidence the testimony of Pedro Auffant y Figueroa himself, of Rafael Quiñones, Juan Príncipe, and Joaquín Figueroa, Federico Toro, Manuel Gándara, Antonio Arias, and Alejandro Alvarado.

Of these witnesses the first—that is to say, Pedro Auffant—testified:

"That he is a merchant and was so in 1896; that one day Juan Serra, with whom he was not acquainted, came to his establishment and proposed to him the sale of an estate which he owned in the *barrio* of Hato Puerco, Juana Díaz, which sale he wished to make with an agreement of repurchase; that the witness replied that business of that character was not in his line; that the following day Serra returned accompanied by Julio Ribas, a friend of the witness, and asked him to enter into the transaction with Serra, because the estate in question was a good one and he could recommend it, considering that he would not let it go for the 1,000 *pesos;* that although he did not know the estate, at the request of Julio Ribas and on his recommendation he accepted the proposition, the term of maturity being stipulated, and he sent Serra with the titles of ownership, which he showed him, to the notarial office of Rafael León to have the deed prepared and advise him when it was ready in order that he could go and sign it and deliver the money; that the deed was signed and he returned to his establishment with Serra, where he gave him the 1,000 *pesos*, of which Serra took 500 odd and left the remainder on deposit with him to

pay 212 *pesos* to Julio Ribas as a partner of the firm of Zeno & Ribas and to meet the orders he would issue in favor of a number of creditors; that he paid this debt to Zeno & Ribas through Julio Ribas, as well as an order drawn by Serra in favor of Manuel Gándara; another drawn by him in favor of Pizá Hermanos; another in favor of Antonio Arias, and another in favor of Pascasio Alvarado; and Serra having thus disposed of the sum which he had left on deposit with the witness he did not issue any further orders nor have any other transactions with the witness; that in February, 1898, the witness received a letter from Serra Urgell in which he offered to pay him under a number of conditions; that Serra did not show any signs of insanity."

Said letter, which was identified as having been written by Serra Urgell and which was admitted in evidence at the trial without objection from the adverse party, reads as follows:

"Mr. Pedro Auffant. Dear Friend: I wish you as ever good health and prosperity and your esteemed family the same. I addressed a memorandum to Julio Ribas, and I suppose you already know what I wrote him. And to-day I can say something more, and that is that I have suffered more than you have and I am still suffering; and in view of the fact that my efforts have been interfered with by all my friends, I am going to be patient. And as I know that everybody needs money I have decided to sell the estate to Marcelino Torres; his land adjoins the estate called García, which has an area of 157 *cuerdas.* Finally, there are three persons who want to buy; I am frank; I only want to sell to help you; no exaggerations; nothing more than it is worth. And if one of the said three individuals would like to have a fat hen for little money such is humanity to-day; they think they are never going to die. I will pay you as you suggest to me in your letter of December 20 last. As you indicate therein, either by conventional sale or at public auction: I agree. I will inform you of my memorandum to Julio Ribas; I told him if you want the interest I will pay it. I tell him if you want the 300 *cuerdas* in lease in order that you may bring all your cattle, and your carts and cartmen. The children will work with the remaining 72 and will have enough to live on. In a word, I leave it to your pleasure; you may select from what I propose; either the money next week or under all the conditions stipulated by you. Nothing more for the present, from your friend and obedient servant, etc.—Juan Serra Urgell. Hato Puerco Abajo, February 20, 1898."

The plaintiff also presented a number of orders of Serra addressed to Pedro Auffant, and it was made a matter of record on petition of the defendant that while they were signed by Juan Serra Urgell they appeared to have been written by other persons and not by the person signing them. These orders are drawn as follows:

"Messrs. Auffant Hermanos. Gentlemen and Friends: Kindly order the delivery to Manuel Gándara of 20 *pesos* worth of provisions, which please charge to the account of your affectionate friend and obedient servant, Juan Serra Urgell. Ponce, August 10, 1896."

"Messrs. Auffant Hermanos. Gentlemen and Friends: Please have the kindness to order the payment on my account to Messrs. Pizá Hermanos the sum of 72.50 *pesos* in money current in trade. Ponce, August 8, 1906. Juan Serra Urgell. Received, Pizá Hermanos. Sgd. Toro."

"Messrs. Auffant Hermanos. Gentlemen and Friends: Please have the kindness to direct the delivery on my order to Antonio Arias of 5 *tierces* of codfish, which you will charge to the account of yours, etc.—Juan Serra Urgell. Ponce, July 9, 1896."

"Messrs Auffant Hermanos. Gentlemen and Friends: Please direct the payment to Pascasio Alvarado, by my order, of the sum of 51 *pesos,* which we will deduct from the deposit. Nothing more from yours, etc.—Juan Serra Urgell."

The other witness, Rafael Quiñones, said:

"That in the year 1896 he had charge of the protocol of the notarial office of Rafael León; that he recognizes the deed shown him executed in said notarial office on June 22, 1896, relating to the consolidation of plantations and the sale with an agreement of repurchase made by Juan Serra Urgell to Pedro Auffant; that this deed was prepared by order of Serra Urgell, who brought and delivered to him for the purpose a number of titles to the tracts of land which were consolidated into a single estate in order to make the sale; that Serra Urgell had furnished him all the data necessary as to boundaries and area of the estate thus formed after the consolidation; that after the deed had been prepared the contents thereof were read to the contracting parties and witnesses present by order of Notary León, and all of them agreeing thereto they signed it; that Serra at that time did not show any signs of insanity, but, on the contrary, his mental faculties appeared to be in good condition."

In relation with the testimony of the preceding witness the ·defendant admitted the execution of the deed relating to the consolidation of estates and the sale with an agreement providing for redemption executed by Juan Serra Urgell before Notary León on July 22, 1896, and such document should be considered to have been submitted to the court and admitted as evidence by agreement of the parties.

The other witnesses, Juan Príncipe and Joaquín Figueroa, said: .

"That they were present in the notarial office of Rafael León in the year 1896 when a deed of sale was executed, with an agreement of redemption by Juan Serra Urgell in favor of Auffant; that they were the attesting witnesses thereto; that said deed was read to the parties and witnesses, and the vendor Serra said: 'I agree,' and signed it; that Serra at said act appeared to be a man in possession of his mental faculties."

Federico Toro:

"That in 1896 he was the attorney in fact of Messrs. Pizá Hermanos, with whom Juan Serra Urgell had maintained commercial relations for many years and that he had complied punctually with his obligations to them. He recognized the order of Serra dated August 8, drawn in favor of Pizá Hermanos upon Auffant, and adds: 'That Serra Urgell on the date of said order did not show that he was suffering from mental aberration; that at that time he had never heard him speak of inventions."

Manuel Gándara:

"That in the year 1896 he was a merchant in this city (Ponce), and maintained commercial relations with Serra Urgell, who met his obligations when they fell due as a man of his word, and that his transactions and business were not of an unusual character. He recognized the order of Serra of August 10, 1896, drawn on Auffant, and said that the latter had paid it; that during his relations with Serra he had never observed that he was suffering from mental derangement; that at that time he had not heard him speak of inventions, as this occurred much later."

Antonio Arias:

"That many years ago he maintained commercial relations with Serra Urgell and that he was still doing so in the year 1896; that the transactions which he had observed at that time were rational, and that he complied very punctually with his obligations when they fell due. He also identified the order of July 9, 1896, drawn on Auffant."

Alejandro Alvarado:

"That in the year 1896 he was the attorney in fact of the commercial business which his father, Pascasio, had in Juana Díaz; that at that time and long before Juan Serra had maintained commercial relations with said firm purchasing merchandise on trust and also provisions for his family payable at times stipulated, and when the payments fell due he met them punctually, conducting his business with exactness; during the time Serra Urgell was doing business with the commercial concern of the father of the witness he had never observed any confusion in his mental faculties. He also identified the order of Serra Urgell on Auffant and stated that the latter had paid it."

Upon the termination of the trial the judge of the District Court of Ponce rendered the following judgment:

"In the city of Ponce, P. R., this 9th day of April, 1907, the trial of this case was held in its order on the calendar, and the plaintiff, Pedro Auffant y Figueroa, appeared through his counsel, Gustavo Rodríguez, and the defendant, Juan Serra Urgell, through his counsel, Carlos López de Tord and Attorney Nemesio R. Canales, the other defendants who did not appear being in default. The court, after having heard the complaint and the answer of the defendant who had appeared, the evidence presented by the parties and the arguments of counsel, holds that the law and the facts are in favor of the plaintiff and against the defendant; and therefore, sustaining the complaint with reference to the recovery, adjudges, and does adjudge, the defendants, Juan Serra Urgell, Antonio Olivera, Francisco, Clotilde, Mauricio, Narciso, and Jaime Serra, must restore Pedro Auffant y Figueroa in the possession of the estate in litigation, described as follows: 'Estate situated in the *barrio* of Hato Puerco Abajo in the municipal district of Juana Díaz having an area of 260.25 *cuerdas,*

equivalent to 102 hectares, 28 ares, and 84 centares, in pasture, woods, brush, cocoanut and other palms, bananas, plantains, and some parts in coffee; upon said estate there were situated three frame houses; one a dwelling-house, 26 meters wide and eight long roofed with galvanized iron and with its sides clapboarded; a store house 10 meters wide by seven long roofed with galvanized iron and having shingled sides; and another house, which was used as a store, 10 meters wide by 4.5 long also roofed with galvanized iron. These buildings were situated on the banks of the Jacaguas and Toabaca Rivers. This estate is bounded on the north by the property belonging to Juan Serralles y Colón; on the south by lands belonging to Miguel Cintrón; on the east by the property of Braulio Fernández; and on the west by other property belonging to Serralles and the Jacaguas River; restitution whereof shall be made within the term of 30 days from the date of this judgment becomes final, and they shall recognize his ownership to said estate, vacating and leaving it unoccupied within the term mentioned. It is held that indemnity for damages does not lie; and the defendants are likewise adjudged to pay the costs of this action amounting to ———. Judgment delivered in the city of Ponce, P. R., April 5, 1907, and entered on the 9th of said month and year. Attest: F. Barnes, Secretary of the District Court. Correct: Julio M. Padilla, District Court Judge.''

Counsel for the defendants filed with the secretary of the court on April 12 a notice of appeal from this judgment, which notice was served on counsel for the adverse party on the same date; and the transcript of the record having been transmitted to this court together with a certified copy of the bill of exceptions and a statement of facts approved by Judge Padilla, who rendered the judgment, with the agreement and assent of both parties, and the briefs having been filed a day for the hearing was set which was attended by counsel for the parties who made their respective arguments.

Now then, a minute and careful examination of the records shows us the absolute conflict between the testimony of the witnesses presented by the parties at the trial, because while the witnesses for the defendant, Luis Aguerrevere, Esteban Vidal, Carlos López de Tord, and Julio Ribas, testified they had been acquainted with Juan Serra Urgell for a long time be-

fore the execution of the deed in question and that they always considered him insane, the witnesses for the plaintiff, Federico Toro, Manuel Gándara, Antonio Arias, and Alejandro Alvarado, affirmed on the contrary that they had been acquainted with Sera Urgell long before the year 1896, when the deed was executed, in connection with his relation with the commercial firm to which the witnesses belonged, and that they had never noticed in him any signs of insanity; the other witnesses for the plaintiff, Rafael Quiñones, Juan Príncipe, and Joaquín Figueroa, the first one in charge of the protocol of the notarial office where said document was executed, and the other two, the attesting witnesses thereto, agree with the latter testimony although they confine theselves to the act of the execution of the deed, and they affirm that Serra Urgell, after having learned the contents of the deed from the notary, signed it as correct, they not having noticed in him on that occasion any signs of mental aberration.

The judge of the trial court availing himself of the power granted him by law to weigh the evidenec has decided the conflict in favor of the plaintiff, as is shown by his having held that the law and the facts are in his favor and consequently that the defendants must restore to him the possession of the estate in question, with the other declarations which the judgment appealed from contains; and as it does not appear that he has abused that power in any respect and, on the other hand, as he heard the arguments and the testimony of the witnesses at the trial, he is in possession of the best data upon which to base his findings on the evidence, and under the circumstances we believe that to this case should be applied the principle established by the jurisprudence of the American courts to the effect that "in cases of conflict or contradiction in the testimony of witnesses the findings of the lower court on the evidence must be respected by the appellate court, unless it shall be clearly shown that it has abused such powers in some manner." We have heretofore applied this principle

in the cases of *María Verges* v. *Domingo Pietri et al.,* 9 P. R.
Rep., p. 20; *José Morales* v. *Machete Central,* 9 P. R. Rep.,
p. 117, and the *Estate of Eulado Iglesias* v. *Gorgonio Bolívar,*
11 P. R. Rep., p. 422, respectively, decided by this court on
June 17 and 23, 1905, and December 12, 1906, and we see no
reason why we should not apply it in this case.

For these reasons we are of the opinion that the judgment
rendered by the District Court of Ponce òn April 6 last, which
is the subject of this appeal, should be affirmed in every re-
spect, with the costs of this appeal against the appellants.

*Affirmed.*

Justices Hernández, Figueras, MacLeary and Wolf con-
curred.